IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JEREMY KERR,** | Case Number 3:15 CV 2438 |
| Petitioner, | Judge Sara Lioi |
| v. | Magistrate Judge James R. Knepp II |
| **NEIL TURNER**, Warden, | |
| Respondent. | REPORT AND RECOMMENDATION |

### INTRODUCTION

*Pro se* Petitioner Jeremy Kerr ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden Neil Turner, filed an answer (Doc. 7) with supplemental exhibits (Docs. 7-1). Petitioner filed a reply. (Doc. 8). The district court has jurisdiction over this petition under 28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated December 14, 2015). Following review and for the reasons stated below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For purposes of federal habeas corpus review of state-court decisions, findings of fact made by the state court are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, those factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial-court record. *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). In this case, Ohio's Sixth District Court of Appeals set forth the following findings of fact:

{¶ 3} The theft charges against appellant relate to payments made by Keith H. Lenz totaling $234,670 towards the purchase and erection of a steel barn and associated work and materials on Lenz's farm located at State Route 579 and Opfer–Lentz Road in Curtice, Ottawa County, Ohio.

\* \* \*

{¶ 5} Keith Lenz testified at trial that on June 5, 2010, a tornado destroyed a 90 by 160 pole barn located on his farm in Curtice, Ohio. Afterwards, appellant contacted Lenz with proposals to replace the barn with a Kirby Building Systems ("Kirby") steel building. In the summer of 2010, Lenz discussed with appellant a series of proposals and price estimates based on the size building Lenz wanted.

{¶ 6} On September 20, 2010, Lenz, personally, and appellant, on behalf of Kerr Buildings, Inc., executed a contract for the steel barn project. Under the terms of the contract, Lenz agreed to pay the total sum of $437,200 for the purchase of a Kirby steel building, its erection on his property, and associated work and materials. Lenz testified that $234,670.00 of the total contract price was for the Kirby steel building itself. The contract provided for a down payment of $87,000. Lenz paid the $87,000 by check to Kerr Buildings Inc. on September 20, 2010, the date the parties executed the contract.

{¶ 7} The record demonstrates that appellant placed an order with Kirby for the steel building. State's Exhibit 11 is a document dated September 28, 2010, from Kirby to Jeremy Kerr at Kerr Buildings. It is referenced to Keith H. Lenz, K10E0431A, and is entitled "Order Acknowledgement [*sic*] and Acceptance." The document states an agreed "contract price" of $234,670 for the order. It also specifies a "Price Protection Date" of January 3, 2011, and various other requirements by Kirby to secure fabrication and delivery of the order.

{¶ 8} Lenz testified at trial that he was responsible under the contract to clear the construction site of equipment and debris to permit the project to proceed. According to Lenz, at the time he entered into the contract for the barn, 40 percent of the destroyed prior barn remained on site, as well as, certain farm equipment. Lenz testified that "[m]y responsibilities were to, you know, to get the equipment moved and the building removed, out of the way, so that he [Kerr] could start building the building."

{¶ 9} Lenz testified that the contract specified an original start date for construction of October 10, 2010, and that by that date, he had not removed the large equipment from the site due to wet conditions on the property. A small portion of the prior building also remained to be removed. According to Lenz, he and appellant reached a verbal agreement that appellant would give Lenz "a four-to-five day notice before he was ready to start." Lenz testified that appellant never complained of delay or

gave notice of his intent to start the project. According to Lenz, if he had received notice, he would have "gotten additional people" involved and probably would have cleared the site within "three, four days at the most."

{¶ 10} Lenz testified that after he entered into the contract for the project, he never saw appellant on the property and appellant never started the project. Appellant did not stake the site out and did not perform any of the concrete work that was to be performed prior to erection of the building. No building materials were ever delivered to the site and no building was ever erected.

{¶ 11} Lenz testified that he had not seen any documents from Kirby on the project until January 12, 2011. On that date appellant provided Lenz copies of various documents appellant received from Kirby. One was a letter dated January 6, 2011 from Kirby to appellant. The letter notified appellant that a January 3, 2011 price protection date had passed and that as a result the contract price of the Kirby order had increased an additional $42,240.60.

{¶ 12} Lenz testified further that he and appellant spoke on January 12, 2011, and he proposed that they tender the full, original $234,670 contract price for the steel building to Kirby at that time to see if Kirby would honor the original price. Lenz testified that on January 13, 2011, he wrote a check in the amount of $147,670 payable to Kerr Buildings for that purpose and handed it to appellant. At Lenz's direction, appellant wrote in the memo field of the check: "Balance on Kirby Build No Labor." This payment plus the prior payment ($87,000) totaled the original contract price of $234,670. Lenz testified that appellant accepted the check and agreed that the payment would be used to get the Kirby steel building.

{¶ 13} The evidence at trial established that appellant cashed both the $87,000 and $147,670 checks and failed to use any of the proceeds for the project. Lenz demanded return of the $234,670 that he paid.

{¶ 14} State Exhibits 15 and 16 are letters from appellant, as president of Kerr Buildings, Inc., to Keith Lenz dated May 5 and 17, 2011. In them, appellant objected to delays in making the site ready to start construction. Appellant proposed (1) that they cancel the original contract, (2) that Kerr's company retains $80,000 of payments made by Lenz under the contract and (3) that the remaining $154,675 paid by Lenz be placed towards a new contract. Kerr claimed that the $80,000 was to compensate his company for losses incurred for delays caused by Lenz in clearing the site to permit construction. Lenz did not agree to the proposal. No refund of any kind was made to Lenz.

\* \* \*

{¶ 31} Nicholas Moskal testified that he is a resident of Ottawa County and that in December 2011, he entered a contract with appellant for appellant to build him a steel barn. Moskal testified that he paid appellant $5,340 under the contract, but appellant did not build the barn. In cross-examination, Moskal admitted appellant dug a hole on the property to check for water and afterwards told him that due to water conditions he couldn't pour concrete to build the barn. Moskal disputed that water conditions precluded the work.

{¶ 32} Moskal also testified that he asked appellant for his money back. Appellant neither performed under the contract nor paid the money back. Ultimately Moskal had a pole barn built on the property by someone other than appellant.

*State v. Kerr*, 2015 WL 3614222, at *1-3, 5 (Ohio Ct. App. June 5, 2015).

## PROCEDURAL BACKGROUND

On February 23, 2012, an Ottawa County Grand Jury indicted Petitioner on two charges of theft. (Doc. 7-1, Ex. 3). On March 1, 2012, Petitioner, represented by counsel, entered a plea of not guilty to all charges. (Doc. 7-1, Ex. 5).

The case proceeded to jury trial on May 5, 2013. (Doc. 7-1, Ex. 34, at 11). On May 8, 2013, the jury found Petitioner guilty of all charges. (Doc. 7-1, Ex. 11, at 152). On May 20, 2013, Petitioner filed a motion for judgment of acquittal. (Doc. 7-1. Ex. 12). The state objected to the motion. (Doc. 7-1, Ex. 13). The trial court denied it. (Doc. 7-1, Ex. 14).

On August 28, 2013, the trial court sentenced Petitioner to thirty months' imprisonment on each count of theft, to be served consecutively. (Doc. 7-1, Ex. 15, at 40-41).

**Direct Appeal**

On November 22, 2013, Petitioner, through new counsel, filed an untimely notice of appeal to the Sixth District Court of Appeals, Ottawa County, Ohio, and motion for leave to file a delayed

4

appeal. (Doc. 7-1, Exs. 17, 18). The court granted his motion for leave. (Doc. 7-1, Ex. 19). In his appellate brief, he raised the following assignments of error:

1. Appellant's convictions are based upon insufficient evidence and are against the manifest weight of the evidence.

2. The court erred in allowing the prosecution to use other act[s] and non-relevant evidence to show character and conformity throughout the trial.

3. The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59, Evid. R. 404(B) and Appellant's rights under Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

(Doc. 7-1, Ex. 21, at 66).

On June 5, 2015, the state appellate court affirmed the trial court's judgment. (Doc. 7-1, Ex. 23, at 104); *Kerr*, 2015 WL 3614222, at \*6. On July 15, 2015, Kerr, *pro se,* filed a motion for reconsideration, which he amended on June 22, 2015. (Doc. 7-1, Exs. 24, 25). The court denied the motion on August 4, 2015. (Doc. 7-1, Ex. 26).

Petitioner, *pro se*, filed a timely notice of appeal in the Ohio Supreme Court. (Doc. 7-1, Ex. 27). In his memorandum in support of jurisdiction, he raised the following propositions of law:

1. Whether the Court of Appeal's "significant amount of work" threshold violated his [Fifth] and [Fourteenth] Amendment[s] to the U.S. [C]onstitution [r]ights to [d]ue [p]rocess and equal [p]rotection of the [l]aw.

2. Whether Appellant's conviction violated his [Fifth] and [Fourteenth] Amendment[s] to the U.S. [C]onstitution [r]ights to [d]ue [p]rocess and equal [p]rotection of the [l]aw when the evidence shows Appellant and Mr. Lenz engaged in discussions of renegotiating and altering the contract.

3. Whether Appellant's conviction violated his [Fifth] and [Fourteenth] Amendment[s] to the U.S. [C]onstitution [r]ights to [d]ue [p]rocess and equal [p]rotection of the [l]aw when the evidence shows he was prevented to commence work.

4. Whether the allowance of [p]rejudical other act[s] evidence violated Appellant's [Sixth] and [Fourteenth] Amendment[s] to the U.S. [C]onstitution, and Art[icle] I, section 10 of the Ohio Constitution [r]ight to a [f]air [t]rial.

5

(Doc. 7-1, Ex. 28, at 114).

On September 30, 2015, the Ohio Supreme Court declined jurisdiction of the appeal. (Doc. 7-1, Ex. 29).

### **FEDERAL HABEAS CORPUS**

On November 25, 2015, Petitioner, *pro se*, filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1). The Petition raises twenty-six grounds for relief, alleging "Petitioner was denied his [Fifth], [Sixth], [Ninth], and [Fourteenth] Amendment[s] to the U.S. Constitution [r]ight[s] to [d]ue [p]rocess and [e]qual [p]rotection of the [l]aw by the entry of conviction against him" for the following reasons:

1. [T]he record demonstrates that Petitioner placed an order with Kirby Building Systems for a steel building.

2. [T]he State Court failed to recognize the fact that Petitioner and the [o]wner established another start date of December 1, 2010.

3. [T]he State Court failed to recognize the fact that the [o]wner failed to prepare the site by December 1, 2010.

4. [T]he State Court failed to recognize the fact that Petitioner and the [o]wner established another start date of March 15, 2011.

5. [T]he State Court failed to recognize the [o]wner failed to prepare the site by March 15, 2011.

6. [T]he State Court failed to recognize the fact Mr. Lenz prepared the site seven months after his contractual obligation of October 10, 2010.

7. [T]he State Court's factual determination that there was no manifest injustice in the jury's treatment of Keith Lenz's testimony concerning appellant's agreement to provide Lenz four to five day notice of his intent to proceed with construction is not supported by the record.

8. [T]he State Court's factual determination that there was no manifest injustice in the jury's treatment of Keith Lenz's testimony concerning that [Petitioner] did not

    complain of delays in making the site ready for construction is not supported by the record.

9. [T]he entry of conviction against him where the State Court's factual determination that there was no manifest injustice in the jury's treatment of Keith Lenz's testimony concerning the issues of Petitioner's nonperformance of the contract is not supported by the record.

10. [T]he entry of conviction against him where the State Court failed to recognize the fact established at trial that the owner's repeated failures to prepare the site prevented Petitioner to proceed under contract.

11. [T]he entry of conviction against him where the State Court failed to recognize evidence that impeached Mr. Lenz's claims of "excessive rain".

12. [T]he entry of conviction against him where the State Court's factual determination implies that Petitioner made a conscience [*sic*] decision to not perform the concrete work is not supported by the record.

13. [T]he entry of conviction against him where the State Court's factual determination that after receiving the money, Petitioner never returned to the farm is not supported by the record.

14. [T]he entry of conviction against him where the State Court's factual determination implies that Petitioner made a conscience [*sic*] decision to not undertake performance of the contract after ordering the building is not supported by the record.

15. [T]he entry of conviction against him where the State Court's factual determination implies that Petitioner made a conscience [*sic*] decision not to erect a building is not supported by the record.

16. [T]he State Court's factual determination implies that Petitioner made a conscience [*sic*] decision to not deliver materials to the job site is not supported by the record.

17. [T]he State Court's factual determination implies that Petitioner made a conscience [*sic*] decision to not "stake the site out" is not supported by the record.

18. [T]he State Court failed to recognize the fact that Petitioner maintained communication with the owner.

19. [T]he State Court failed to recognize the fact that Petitioner and Mr. Lenz were in negotiations of altering the work to be done under contract.

20. [T]he State Court failed to recognize the fact that Petitioner partially performed by placing an order for the steel building with Kirby Building Systems.

21. [T]he Trial Court allowed prejudicial other acts testimony to show character and conformity.

22. [T]he Trial Court admitted prejudicial other acts testimony to show character and conformity.

23. [A]bsent sufficient evidence that at the time he took the money he had no intent to perform under contract.

24. [T]he State Court's application of law that requires performance of a "significant amount" of work to negate intent to deprive.

25. [T]he State Court's application of law that performing minimally on a contract is insufficient to negate intent to deprive.

26. [A]bsent sufficient evidence that Petitioner had no intent to perform under contract when he took the money.

(Doc. 1-1).

On January 28, 2016, Respondent filed an answer (Doc. 7) with supplemental exhibits (Doc. 7-1). On February 24, 2016, Petitioner filed a reply. (Doc. 8). On March 14, 2016, Petitioner filed a motion for evidentiary hearing, which will be addressed below. (Doc. 9).

## JURISDICTIONAL ISSUES

**Non-Cognizable Claims**

*Grounds Twenty-One and Twenty-Two: Trial-Court Error / Evidentiary Ruling*

In his twenty-first and twenty-second grounds for relief, Petitioner claims the trial court violated his federal constitutional rights by allowing Moskal to testify about his past dealings with Petitioner on a contract to construct a steel barn. (Doc. 1-1, at 25-28).

Petitioner raised this claim in state court. (Doc. 7-1, Exs. 21, 28, at 74-79, 122). The state appellate court, the last state court to address the claim, opined:

{¶ 30} Under assignment of error No. 2, appellant argues that the trial court erred in admitting other acts evidence at trial, specifically the testimony of Nicholas Moskal concerning his dealings with appellant on a contract to construct a steel barn. Appellant contends that Moskal other acts evidence was inadmissible under Evid.R. 404(B). Under assignment of error No. 3, appellant argues that the trial court erred by admitting the other acts testimony of Moskal, contending that the evidence is inadmissible under Evid.R. 404(B), R.C. 2945.59, Article I, Section 10 of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution. We consider these two assignments of error together.

\* \* \*

{¶ 31} Nicholas Moskal testified that he is a resident of Ottawa County and that in December 2011, he entered a contract with appellant for appellant to build him a steel barn. Moskal testified that he paid appellant $5,340 under the contract, but appellant did not build the barn. In cross-examination, Moskal admitted appellant dug a hole on the property to check for water and afterwards told him that due to water conditions he couldn't pour concrete to build the barn. Moskal disputed that water conditions precluded the work.

{¶ 32} Moskal also testified that he asked appellant for his money back. Appellant neither performed under the contract nor paid the money back. Ultimately Moskal had a pole barn built on the property by someone other than appellant.

{¶ 33} Evid.R. 404(B) provides in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 34} In a criminal case, R.C. 2945.59 also permits use of other acts evidence of a defendant which "tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question." The standard for determining admissibility under Evid.R. 404(B) and R.C. 2945.59 is strict. *State v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988), paragraph one of the syllabus.

{¶ 35} In *State v. Williams*, 134 Ohio St.3d 521, 2012–Ohio–5695, 983 N.E.2d 1278, the Ohio Supreme Court directed trial courts to conduct a three-step analysis when considering the admissibility of other acts evidence. *State v. Ridley*, 6th Dist. Lucas No. L–10–1314, 2013–Ohio–1268, ¶ 33. The analysis provides:

9

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403. *Williams* at ¶ 20.

{¶ 36} Appellate courts review trial court decisions on the admissibility of other acts evidence under an abuse of discretion standard of review. *State v. Morris*, 132 Ohio St.2d 337, 2012–Ohio–2407, 972 N.E.2d 528, syllabus.

{¶ 37} Appellant argues that the Moskal testimony was not admissible under Evid.R. 404(B) and that the evidence was used to attack his character. Appellant contends that concerns about claimed water problems on the Moskal property distinguishes the Moskal dispute and precludes the other acts evidence from having any probative value on Evid.R. 404(B) issues in this case.

{¶ 38} The state argues that the Moskal dispute was similar in that appellant obtained money for the erection of a steel building, performed no substantial services, and did not refund the money paid. The state argues that the other acts evidence was relevant to prove a common scheme or plan, intent, and lack of mistake.

{¶ 39} Undertaking the required *Williams* analysis, we conclude that the Moskal other acts evidence was relevant in this case to prove plan, intent, and lack of mistake and that the evidence held probative value on those issues. The other acts evidence was not presented to prove the character of appellant but was presented for legitimate purposes under Evid.R. 404(B). We acknowledge that the probative value of the Moskal other acts evidence is lessened by the existence of a dispute over the effect of water conditions on contract performance, we nevertheless conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice at trial. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the Moskal other acts evidence at trial.

*Kerr*, 2015 WL 3614222, at *5-6.

Respondent argues that these claims are not cognizable on federal habeas review. (Doc. 7, at 22-24). The undersigned agrees.

10

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Generally, therefore, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012); *see also Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988) ("It is a clearly established rule that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in federal habeas corpus proceedings."). Federal habeas courts presume that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings. *Small v. Brigano*, 134 F. App'x 931, 936 (6th Cir. 2005). Nevertheless, state-court evidentiary rulings may "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). To do so, they must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). But "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

Thus, to the extent that Petitioner alleges state-law violations, these claims are not cognizable. Indeed, beyond one cursory reference in a heading to the United States Constitution and federal due process and equal protection rights, Petitioner cites only Ohio evidentiary law to support his arguments, which the state court aptly addressed – applying Ohio law. The only issue here, therefore, is whether the challenged ruling resulted in a denial of fundamental fairness. It did not. Petitioner does not advance any argument as to how the state appellate court's decision violated fundamental fairness or any other federal constitutional principle, and the undersigned can find none. This claim is meritless, and the undersigned recommends that Petitioner's twenty-first and twenty-second grounds for relief be dismissed.

## STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner

must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

State trial court factual determinations are presumed correct and a petitioner must present clear and convincing evidence to the contrary in order to overcome the correctness presumption. 28 U.S.C. § 2254(e).

## DISCUSSION

### Grounds One through Twenty and Twenty-Three through Twenty-Six: Sufficiency of the Evidence

In Petitioner's remaining grounds for relief – grounds one through twenty and twenty-three through twenty-six – he essentially argues that his convictions were not supported by sufficient evidence. (Doc. 1-1). Respondent contends the claims are meritless. (Doc. 7, at 16-22).

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979). A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Petitioner's sufficiency claim, federal habeas review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA.'" *Davis v. Lafler*, 658 F.3d

13

525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner presented these claims on direct appeal.[1] The state appellate court, the last state court to address them, reasoned:

> {¶ 16} A challenge to a conviction based upon the sufficiency of the evidence to support a conviction presents a question of law on whether the evidence at trial is legally adequate to support a jury verdict on all elements of a crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An appellate court does not weigh credibility when reviewing the sufficiency of evidence to support a verdict. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A reviewing court considers whether the evidence at trial "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

---

[1] As Respondent argues, although Petitioner does not clearly state the legal theory upon which these federal habeas claims are based, they appear to be sub-claims of the broader sufficiency claims he asserted in state court (*see* Doc. 7-1, Exs. 21, 28, at 70-74, 119-22). (Doc. 7, at 12-13). To the extent they are not, he argues, they are procedurally defaulted because Petitioner did not raise them in state court. (Doc. 7, at 13). The undersigned agrees and recommends the claims be dismissed on that ground. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (federal habeas petitioners must give state courts "one full opportunity to resolve [a federal constitutional claim] by invoking one complete round of the State's established appellate review process"); *State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.); *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . .") (internal citations omitted). Additionally, to the extent Petitioner's claims are based on a manifest-weight-of-the-evidence theory, those claims are not cognizable on federal habeas review, and should be dismissed on that ground. *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (the Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt).

14

{¶ 17} Appellant was convicted of two counts of theft, violations of R.C. 2913.02(A)(3) and 2913.02(A)(2). R.C. 2913.02(A)(3) prohibits theft by deception. The statute provides:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> * * *
>
> (3) By deception;

{¶ 18} R.C. 2913.02(A)(2) prohibits theft by knowingly obtaining or exerting control over property or services beyond the scope of the express or implied consent of the owner:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> * * *
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

{¶ 19} In *State v. Coleman*, 2d Dist. Champaign No 2002 CA 17, 2003–Ohio–5724, the Second District Court of Appeals considered the proof required to establish violations of R.C. 2913.02(A)(3) and 2913.02(A)(2) in the context of a claimed contract dispute. To prove theft by deception under R.C. 2913.02(A)(3), "the State must demonstrate that at the time the defendant took the money he had no intent to repay the money or perform under the contract in exchange. *State v. Bakies* (1991), 71 Ohio App.3d 810, 595 N.E.2d 449." *Coleman* at ¶ 29. "[F]or a violation of R.C. 2913.02(A)(2), the State must prove that at the time the defendant exceeded the scope of consent of the owner of the money, he had the intent to deprive the owner of the money. *State v. Dortch* (October 15, 1999), Montgomery App. No. 17700; *State v. Metheney* (1993), 87 Ohio App.3d 562, 622 N.E.2d 730." Id. at ¶ 29.

{¶ 20} Under *Coleman*, performance of a significant amount of the work under the contract demonstrates an intent to perform the contract (R.C. 2913.02(A)(3)) and precludes an inference that the defendant exceeded the scope of the owner's consent with intent to deprive the owner of the money (R.C. 2913.02(A)(2)). *Id.* at ¶ 40.

15

{¶ 21} Appellant argues that he had begun work on the project, ordered and purchased materials and had met Lenz on a number of occasions in order to work on the building. In our view, construing the evidence most favorably to the prosecution, the record demonstrates that appellant placed a preliminary order for the Kirby building in September 2010, and that appellant failed to undertake performance of the contract afterwards. He did not return to the farm. He did not stake out the building or perform concrete work for the building. No building materials were ever delivered to the contract site. Appellant did not erect a steel building on the site and refused to make a refund of the $234,670 paid by Lenz for the project.

{¶ 22} We conclude that appellant's placing the order for the building with Kirby, alone does not constitute significant performance of the contract with Lenz. Performing minimally on a contract is insufficient to negate a finding of the required intent to support a conviction under either R.C. 2913.02(A)(3) or R.C. 2913.02(A)(2). *See State v. Dalton*, 11th Dist. Portage No.2008–P–0097, 2009–Ohio–3149, ¶ 33; *State v. Smith*, 12th Dist. Butler No. CA2004–11–275, 2005–Ohio–6551, 17–18; *Coleman* at ¶ 31, 40.

*Kerr*, 2015 WL 3614222, at *3-4.

Petitioner contends the state court's decision is unreasonable because the evidence adduced at trial demonstrated the following: (1) he placed an order with Kirby Building Systems for a steel building; (2) he and Lenz established "another" start date of December 1, 2010; (3) Lenz failed to prepare the site by the December date; (4) he and Lenz then established "another" start date of March 15, 2011; (5) Lenz failed to prepare the site by the March date; (6) Lenz prepared the site seven months after his contractual obligation of October 10, 2010; (7) Lenz falsely testified about Petitioner's agreement to provide Lenz four to five days' notice of his intent to proceed with construction; (8) Lenz falsely testified about Petitioner's complaints concerning Lenz's delays in preparing the site; (9) Lenz falsely testified about Petitioner's nonperformance of the contract; (10) Lenz's repeated failures to prepare the site prevented Petitioner from proceeding under the contract; (11) Lenz falsely testified about "excessive rain"; (12) Petitioner did not decide not to perform the concrete work; (13) Petitioner returned to the farm after receiving Lenz's payment; (14) Petitioner

16

did not decide not to perform under the contract after ordering the building; (15) Petitioner did not decide not to erect a building; (16) Petitioner did not decide not to deliver materials to the job site; (17) Petitioner did not decide not to "stake the site out"; (18) Petitioner maintained communication with Lenz; (19) Petitioner and Lenz were renegotiating the contract; (20) Petitioner partially performed the contract by ordering the steel building; (21) Petitioner intended to perform under the contract when he took the payment; and (22) the court misapplied Ohio law regarding how much work negates intent to deprive a party of payment under a service contract. (Doc. 1-1).

These arguments do not establish that *no* rational trier of fact could have found the state proved the essential elements of theft beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. As noted above, state-court factual determinations are presumed correct, which habeas petitioners cannot overcome without presenting clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e). Habeas courts also may not re-weigh the testimony or redetermine the credibility of witnesses, as that is solely the province of the jury. *See, e.g., Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). Thus, Petitioner's factual arguments regarding his and Lenz's actions and the truth or credibility of Lenz's and other witness's testimony are not well-taken. In addition, federal habeas courts are bound by a state court's determination of state law. *See, e.g., Estelle,* 502 U.S. at 68. Petitioner's arguments about the state appellate court's application of Ohio law in his case, therefore, also are not persuasive.

The state appellate court's decision is neither contrary to, nor an unreasonable application of, *Jackson* and its progeny. Accordingly, the undersigned recommends the Court dismiss Petitioner's first through twentieth and twenty-third through twenty-sixth grounds for relief.

17

**CONCLUSION AND RECOMMENDATION**

Grounds One through Twenty and Twenty-Three through Twenty-Six fail on the merits. Grounds Twenty-One and Twenty-Two are non-cognizable on federal habeas review. There has been no demonstrated need for an evidentiary hearing, and Petitioner's motion for such a hearing (Doc. 9) is denied. Finally, Petitioner has not established any error resulting in a denial of fundamental fairness or cause to hesitate due to the probability of actual innocence. The undersigned therefore recommends the Petition (Doc. 1) be denied and dismissed in its entirety.

    s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).